John E. Lord (Bar No. 216111)
jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd. Penthouse Suite
Beverly Hills, CA  90210
Phone:  (310) 954-9497

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
Nate L. Dilger (Bar No. 196203)
ndilger@onellp.com
**ONE LLP**
4000 MacArthur Blvd. Suite 1100
Newport Beach, CA 92660
Phone:  (949) 502-2870

*Attorneys for Plaintiff,
Agranat IP Licensing LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT – SOUTHERN DIVISION

| | |
|---|---|
| Agranat IP Licensing LLC,<br><br>Plaintiff,<br><br>v.<br><br>Hewlett-Packard Company,<br><br>Defendant. | CASE NO. CV12-1910 JST (RNBx)<br>Honorable Josephine S. Tucker<br><br>**AGRANAT'S *EX PARTE* APPLICATION FOR AN ORDER STRIKING THE DECLARATION OF PETER ALEXANDER PH.D. REGARDING THE MEANING OF CERTAIN CLAIM TERMS OF U.S. PATENT NO. 6,456,308; MEMORANDUM OF POINTS AND AUTHORITIES;**<br><br>**[DECLARATION OF JOHN E. LORD IN SUPPORT THEROF AND [PROPOSED] ORDER LODGED CONCURRENTLY]**<br><br>Complaint Filed: November 5, 2012<br>Trial: July 29, 2014 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff Agranat IP Licensing LLC ("Agranat") hereby moves *ex parte* to this Court for an order striking the "Declaration of Peter Alexander, PH.D., Regarding the Meaning of Certain Claim Terms of U.S. Patent No. 6,456,308." This application is being made on an emergency basis because HP untimely served this expert declaration on August 15, 2013, after business hours. The Court's Scheduling Order (Dkt. No. 25) required HP to disclose its expert's opinions on August 2, 2013, and the Court set aside 28 days for claim construction discovery, from August 2, 2013 to August 30, 2013. As a result of HP's untimely disclosure, Agranat will now have less than two weeks to review the expert's opinions and corresponding exhibits, and then schedule, prepare and depose HP's expert prior to the Court's August 30, 2013, deadline for completion of claim construction discovery.

As shown in the attached Memorandum of Points and Authorities, good cause exists for this *Ex Parte* Application because HP has violated the Court's Scheduling Order, thereby depriving Agranat adequate time to conduct proper claim construction discovery.

This Application is made after providing notice to counsel for Defendant Hewlett Packard ("HP") as required by Local Rule 7-19.1, by emailing HP's counsel on the morning of August 16, 2013, stating that Agranat would be moving *ex parte*. HP responded stating that it would be opposing the instant *ex parte*. Agranat's counsel, John E. Lord, subsequently emailed and spoke with HP's counsel, Andrew Radsch, in the afternoon of August 16, 2013. The parties were unable to reach a resolution. *See* accompanying declaration of John E. Lord ("Lord Decl.").

Agranat's *Ex Parte* Application is based upon this Application, the supporting Memorandum of Points and Authorities, the Declaration of John E. Lord and supporting exhibits, as well as all records and pleadings on file with the Court in this action.

///

///

**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

1  HP'S COUNSEL IS HEREBY ADVISED THAT ANY OPPOSITION MUST BE FILED
2  NOT LATER THAN 24 HOURS AFTER SERVICE OF THIS APPLICATION.  IF
3  COUNSEL DOES NOT INTEND TO OPPOSE THE EX PARTE APPLICATION,
4  COUNSEL MUST INFORM THE COURTROOM DEPUTY BY TELEPHONE AS
5  SOON AS POSSIBLE.

Dated:  August 19, 2013           **ONE LLP**

                         By:  */s/ J. Lord*
                              John E. Lord
                              Attorneys for Plaintiff, Agranat IP Licensing LLC

**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Agranat IP Licensing ("Agranat") moves *ex parte* to strike the untimely "Declaration of Peter Alexander, PH.D., Regarding the Meaning of Certain Claim Terms of U.S. Patent No. 6,456,308" in support of Defendant Hewlett-Packard ("HP") claim construction positions.

On August 2, 2013, Agranat and HP submitted their Joint Claim Construction and Pre-Hearing Statement (Dkt. No. 37) pursuant to the Court's Scheduling Order. At the time of the Joint Claim Construction Statement and Prehearing Statement, the parties were required to disclose "[w]hether any party proposes to call one or more witnesses at the Claim Construction Hearing, the identity of each such witness, and for each witness, a summary of his or her testimony *including, for any expert, each opinion to be offered related to claim construction.*" Patent L.R. 4-3(e) (emphasis added).[1] As part of the Joint Claim Construction Statement, neither party identified any expert nor did any party disclose a summary of expert opinions to be offered related to claim construction.

On August 15, 2013, after business hours, and two weeks after submitting the Joint Statement, HP served on Agranat an 18 page expert declaration (attaching another 72 pages of exhibits) in support of HP's claim construction positions. *See* Lord Decl., Exs. A-B. HP also used this expert declaration to include additional citations to extrinsic evidence that were not included in the Joint Claim Construction Statement. The Court's Scheduling Order set aside 28 days for claim construction discovery. As a result of HP's untimely disclosure, Agranat will now have less than two weeks to review the expert's opinions and

---

[1] There has been some confusion between the parties as to the applicability of the Northern District of California's Local Patent Rules. The Court's Scheduling Order provides a schedule of disclosures that models the Northern District of California's Local Patent Rules. The Court in this case, and this District, however, have not formally adopted these local patent rules. Although the parties have not agreed to abide by each of the Northern District's Local Patent Rules, these rules nonetheless should provide guidance for the claim construction disclosure process. *See, e.g.,* Ex. F, p. 1, to accompanying declaration of John E. Lord ("Lord Decl.") wherein HP discussed the applicability of the local patent rules.

1
**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

corresponding exhibits, and then schedule, prepare and depose HP's expert prior to the Court's August 30, 2013, deadline for completion of claim construction discovery.

HP's untimely disclosure of its expert's opinions, and inclusion of additional support, is plainly inconsistent with the Court's Scheduling Order, and with basic principles governing the fair disclosure of expert opinions. Thus, the Court should strike the Declaration of Peter Alexander as containing untimely opinions.

## II. THE COURT SHOULD STRIKE THE UNTIMELY EXPERT DECLARATION OF PETER ALEXANDER.

### A. The Court's Scheduling Order Provides a Specific Framework for the Disclosure of Expert Opinions on Claim Construction.

The Court's Scheduling Order models the Northern District of California's Local Patent Rules and establishes a specific series of disclosures that must be provided by each party by specific dates. These disclosures include not only infringement and invalidity contentions to help elucidate the issues that will be in dispute, but a sequence of specific claim construction disclosures that permit the parties to fully and fairly consider, discuss, and, ultimately, litigate claim construction issues. *See* Dkt. No. 25; *see also*, Patent L.R. 4-1–4-6.

Following these submissions, the parties are to work jointly on a Joint Claim Construction Statement, at which time they must disclose "[w]hether any party proposes to call one or more witnesses at the Claim Construction Hearing, the identity of each such witness, and for each witness, a summary of his or her testimony *including, for any expert, each opinion to be offered related to claim construction.*" Patent L.R. 4-3(e) (emphasis added). Thereafter, "the parties shall complete all discovery relating to claim construction, including any depositions with respect to claim construction of any witnesses, including experts, identified in the Preliminary Claim Construction statement (Patent L.R. 4-2) or Joint Claim Construction and Prehearing Statement (Patent L.R. 4-3)." Patent L.R. 4-4. The Court's Scheduling Order allows for this claim construction discovery process to take place between August 2, 2013 and August 30, 2013. *See* Dkt. 25. To emphasize the

importance of this claim construction disclosure and discovery process, the Patent Local Rules demand "Good Faith Participation" at the threat of sanctions under 28 U.S.C. § 1927. Patent L.R. 4-7.

In short, the Patent Local Rules and this Court's Scheduling Order prescribe a specific sequence for claim construction expert discovery: (1) expert opinions are exchanged, (2) experts are deposed concerning their opinions during the claim construction discovery process, and then (3) claim construction briefs are filed. The result of this process is a full, fair and ordered procedure for expert opinions on claim construction that yields both good case management and a record on which the Court can be assured that expert evidence has been fairly tested under the adversary process and cross-examination. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[E]xtrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence. The effect of that bias can be exacerbated if the expert is not one of skill in the relevant art or if the expert's opinion is offered in a form that is not subject to cross examination.").

**B.   Dr. Alexander's Declaration Discloses New Opinions and New Evidence for the First Time After the Court's Scheduling Order's Deadline for Expert Opinions**

In the parties' Joint Claim Construction and Prehearing Statement, HP did not identify any expert nor did HP offer any opinions to be offered related to claim construction. All that HP offered on the subject was a brief statement that: "HP may rely on expert testimony to provide context for or to aid in the understanding of the cited references." *See* Dkt. 37-1, p. 1.

In contrast, Dr. Alexander's untimely Declaration contains 18 pages of opinions on substantive claim construction issues that were not disclosed. The following table highlights, using the claim term "compiling/compiled" as an example, the extent to which Dr. Alexander's declaration reflects a departure from the Joint Statement:

| August 2, 2013 Joint Statement Summary of Opinions | Dr. Alexander's Declaration Opinions |
|---|---|
| "compiling" / "compiled"<br><br>HP may rely on expert testimony to provide context for or to aid in the understanding of the cited references | "compiling" / "compiled"<br><br>26. Computer programs generally are written by a programmer as a series of textual commands. In order for the computer to execute a program, those textual commands must be translated into instructions that the computer's processor can understand. The term "compiling" refers to the process of translating a computer program written as a series of textual, generally human-readable, commands (which may be referred to as source code) into machine-readable instructions before execution of that program by the computer processor can occur. The machine-readable instructions may be referred to as object code, and generally are in the form of 1s and 0s. Compiling is performed by a program referred to as a compiler.<br>27. A person of ordinary skill in the art would understand that there is a difference between "compiling" on the one hand, and "interpreting" on the other. Whereas compiling refers to translating all of the source code of a given program into machine-readable instructions before execution of that program occurs, interpreting refers to the process of translating into machine readable instructions and executing each code statement in a source document one statement at a time, |

4
**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

such that each statement is translated and executed before the next statement is translated and executed. Interpreting is performed by a program called an interpreter.

28. This distinction between compiling and interpreting was well-known to persons of skill in the art at the time of the alleged invention. For example, the *Microsoft Press Computer Dictionary* (1994) (attached as Exhibit C) at p.85 defines "compile" as follows: "To translate *all* the source code of a program from a high-level language into object code prior to execution of the program" (emphasis added). The same dictionary, at p.220, defines "interpret" as follows: "To decode and execute a statement or an instruction. The term usually refers to executing a program by decoding a statement, executing it, decoding the next statement, executing it, and so on. In contrast, compilation involves decoding all statements into executable code; executing that code is a separate step." As an additional example, the *PC User's Essential Pocket Dictionary* (1994) (attached as Exhibit D) at p.290 explains that "[u]nlike a *compiler*, which must translate the whole program before execution can start, an interpreter translates and then executes each line one at a time" (emphasis in original).

29. Thus, the term "interpreting" encompasses both translation and execution, whereas "compiling" does not encompass execution, which is a

5

**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

separate step subsequent to compiling.

30. The specification of the '308 patent acknowledges that execution is a step subsequent to compiling (and linking). For example, the specification states: "Before an application written in a high-level language can be executed it must be compiled and linked to transform the application source code into an executable image." ('308 patent, col. 1, ll. 65-67).  The specification also states: "The compiler 101 takes source code 103 generated using the source code editor or from other sources and produces object code 105, which is later linked to form the executable image." ('308 patent, col. 10, ll. 59-62). These statements from the specification are consistent with a person of ordinary skill in the art's understanding of how compiling works.

31. Compiling is performed prior to execution of the program so that the machine readable instructions can be stored by the computer and executed when appropriate. That is, the effort of producing executable machine readable instructions from source code need be performed only once, avoiding the overhead of such steps each time the application program is run. Hence, compilers need not process source code in real time. In contrast, interpreting is done at run-time and in real time, with the conversion to machine readable instructions occurring each and every time the program is run.

**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

| | |
|---|---|
| 1 | 32. The alleged inventors of the '308 patent acknowledged the distinction between compiling and interpreting during the prosecution of the parent application to the '308 patent, U.S. Patent Application No. 08/907,770 (the "'770 Application"). In attempting to distinguish then-pending claim 11 over U.S. Patent No. 5,572,643 to Judson, the applicants stated: Compiling and interpreting are known as different methods of processing a source code document, each having its own distinct purposes, characteristics, advantages and disadvantages. For example, compilers need not process source code in real time, while interpreters process code at run time and in real time. As such, the problem of compilers and interpreters are also known and understood to be different and substantially unrelated. ('770 Application File History, Nov. 9, 1998 Office Action Response, at p.7 (attached as Exhibit I)). |
| | 33. The specification of the '308 patent also acknowledges that compiling is distinct from interpreting. For example, the specification states: Scripts are usually written in an ***interpreted*** language such as Basic, Practical Extraction and Report Language (Perl) or Tool Control Language (Tel) or one of the Unix operating system shell languages, but they also may be written in programming languages such as the "C" programming language and then ***compiled*** into an executable program. |

7

**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

| | |
|---|---|
| | ('308 patent, col. 5, ll. 36-42) (emphasis added).<br>34. Based on the above, it is my opinion that a person of ordinary skill in the art would understand the terms "compiling" / "compiled" to mean ***"translating a program / a program translated from source code into machine readable instructions prior to execution of the program (this is different from interpreting/interpreted, where each statement is translated and executed before the next statement is translated and executed)."*** |

*Compare* Dkt. 37-1, p.14, *with* Ex. B, pp. 5-8

      Moreover, HP, in Dr. Alexander's expert declaration, has relied upon new citations to extrinsic evidence that were not disclosed in the Joint Statement. Using the same term "compiling" / "compiled" as an illustration, the following recites paragraph 28 from Dr. Alexander's declaration where the new citations to extrinsic evidence not found in the Joint Claim Construction Statement have been underlined.

      28. This distinction between compiling and interpreting was well-known to persons of skill in the art at the time of the alleged invention. For example, the *Microsoft Press Computer Dictionary* (1994) (attached as Exhibit C) at p.85 defines "compile" as follows: "To translate all the source code of a program from a high-level language into object code prior to execution of the program" (emphasis added). <u>The same dictionary, at p.220, defines "interpret" as follows: "To decode and execute a statement or an instruction. The term usually refers to executing a program by decoding a statement, executing it, decoding the next statement, executing it, and so on. In contrast, compilation involves decoding all statements into executable code;</u>

8
**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**

executing that code is a separate step." As an additional example, the *PC User's Essential Pocket Dictionary* (1994) (attached as Exhibit D) at p.290 explains that "[u]nlike a *compiler*, which must translate the whole program before execution can start, an interpreter translates and then executes each line one at a time." *Compare* Dkt. 37-1, pp. 14-15, *with* Ex. A., p.6

As shown above, HP has utilized Dr.'s Alexander Report to introduce new citations to extrinsic evidence. Specifically, citations to the definition of "interpret" from the *Microsoft Press Computer Dictionary* (1994) have now been added, as well as a citation to *PC User's Essential Pocket Dictionary* (1994). Neither of these references was identified in HP's extrinsic evidence citations in the Joint Claim Construction Statement. *See* Dkt. No. 37-1, pp. 14-15.

Similarly, for the term "directory tree" the Alexander Declaration relies on a definition from the "*IBM Dictionary of Computing* (1993)" and the "*Microsoft Press Computer Dictionary* (1994)." Both of the citations were not identified in the extrinsic evidence citations for "directory tree" in the Join Claim Construction Statement. *Compare* Dkt. 37-1, pp. 20-21 *with* Ex. B, pp.12-13.

### C. Dr. Alexander's Untimely Expert Declaration Should Be Stricken

The Federal Circuit has confirmed that, in the context of untimely expert opinions, the Court may prohibit a party from introducing such matters into evidence. *See Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 745 (Fed. Cir. 1997) ("Rule 16(b) of the Federal Rules of Civil Procedure authorizes a district court to control and expedite pretrial discovery through a scheduling order, and may prohibit a party that violates a scheduling order from introducing designated matters in evidence."); *see also Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298 (Fed. Cir. 2003) (affirming district court order striking untimely expert report).

The same result should apply here where a party fails to disclose any summary of an expert opinion until two weeks prior to the completion of the claim construction discovery period. By any measure, HP's proffer of Dr. Alexander's opinions has violated the very

premise underlying this Court's Scheduling Order. It is beyond dispute that HP's late-filed claim construction expert report offers new opinions related to claim construction after the Court scheduled date.

HP's failure to comply with the Court's Scheduling Order is not a mere technicality. In violating the Court's Scheduling Order, HP has prejudiced Agranat by reducing the normal 28 day claim construction discovery period into a period of two weeks. Agranat has insufficient time to review and analyze Dr. Alexander's opinions, and schedule, prepare, and depose Dr. Alexander before the August 30, 2013, deadline. Agranat additionally is prejudiced because it has to respond to new extrinsic evidence citations that were never disclosed in the parties Joint Claim Construction Statement. The cure for that prejudice is to strike Dr. Alexander's declaration and hold HP to the extrinsic evidence and opinions it timely disclosed in the Joint Statement. *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 257 F.R.D. 580, 581, 585 (N.D. Cal. 2009) (precluding experts from submitting new opinions or analyses with reply brief, and precluding reliance on late-disclosed information, where "Defendants were prejudiced by these violations in preparing for and conducting the depositions of [the experts] and in preparing the opposition to Plaintiffs' Motion").

Further, this case has been pending for over nine months and the Court issued its Scheduling Order on April 5, 2013, providing HP with sufficient time to prepare an expert declaration to support its claim construction position. There is no reasonable basis for HP's delay and untimely disclosure. HP also cannot claim unfair surprise because Agranat put HP on notice of its position immediately upon HP raising the issue, prior to the parties' submission of the Joint Claim Construction Statement. *See* Ex. E.

Lastly, HP cannot claim any prejudice should the Court strike Dr. Alexander's declaration. The Court can properly construe the claims terms at issue without the need for expert testimony. Claim construction relies primarily on intrinsic evidence. "It is not uncommon in patent cases to have such dueling experts. When construing claims, however, the intrinsic evidence and particularly the claim language are the primary resources. We

have held that extrinsic evidence such as expert testimony is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) *quoting Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

### III. CONCLUSION

For the foregoing reasons, Agranat respectfully requests that the Court grant its *Ex Parte* application to strike the declaration of Peter Alexander.

Pursuant to Local Rule 7-19, the name, address, telephone number and e-mail address of counsel for the opposing party is as follows:

Khue Hoang
khue.hoang@ropesgray.com
(212) 596-9468
Andrew Radsch
Andrew.Radsch@ropesgray.com
(212) 841-0457
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036

Mario Moore
Mario.moore@morganlewis.com
(949) 399-7193
MORGAN, LEWIS & BOKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA 92614-3508

Dated: August 19, 2013

**ONE LLP**

By: /s/ J. Lord

John E. Lord
Attorneys for Plaintiff, Agranat IP Licensing LLC

11
**EX PARTE APPLICATION TO STRIKE DECLARATION OF PETER ALEXANDER**